## Case No. 11,887.

### ROBBINS v. WELSH.

[30 Leg. Int. 329;[1] 9 Phila. 409.]

Circuit Court, E. D. Pennsylvania. Oct. 6, 1873.

BILL OF LADING—RIGHT OF CONSIGNEE TO DESIGNATE PLACE OF DISCHARGE—SELECTION.

A consignee who has a right to designate where to discharge the cargo must select a suitable and safe place for its discharge.

Appeal from the district court of the United States for the Eastern district of Pennsylvania.

[This was a libel by Samuel B. Robbins, master of the Southern Belle, against S. & W. Welsh.]

Henry Flanders, for libellant.

Morton P. Henry, for respondents.

McKENNAN, Circuit Judge. The master of a vessel, who has the right to select the place to discharge his cargo, is bound to select a customary dock or wharf for the delivery of the kind of goods with which his ship is freighted, and it must be suitable and safe for the deposit of them. Upon a consignee, who has stipulated for this right, a reciprocal obligation rests. He must designate a place at which the delivery is practicable, and where it can be effected without unreasonable delay or exposure of the vessel to avoidable danger. "In all commercial and maritime affairs, time is an element of great value and importance;" and, therefore, for, any unnecessary detention of the vessel, without the fault of the master, where demurrage is not expressly stipulated for, the consignee is impliedly liable for damages in the nature of demurrage. Randall v. Lynch, 2 Camp. 352; Philadelphia & R. R. Co. v. Northam [Case No. 11,090].

Where, from the crowded state of the dock or other temporary obstruction, delay must ensue in unloading the vessel, the appropriate remedy of the owner is for damages for the detention, and he ought not to resort to another place of discharge without the consent of the consignee. But if it is impracticable, at the time, to deliver his cargo at the place appointed, and awaiting a berth would be attended with imminent danger of injury to his vessel, he may demand of the consignee the selection of another place of discharge; and upon the consignee's neglect or refusal to appoint one, he may himself resort to another place, as convenient as may be to the one fixed by the consignee. In the present case, the consignees, having the right by the bill of lading so to do, named Willow street wharf, in the city of Philadelphia, as the place for discharging the cargo. The libellant took his vessel to that wharf; but finding all its berths occupied and the running ice rendering it very dangerous to remain there, he removed her to Washington street wharf. The proofs show clearly that a delivery of the cargo at Willow street wharf was, at the time, impracticable, and that to await an opportunity to unload the vessel there would have been attended with great peril to her. Upon being informed of these facts, as they were, it was the duty of the consignees to designate another place where the discharge of the cargo could be promptly begun and safely effected. This they did not do until the afternoon of December 22d, when they wrote a note to the master, in substance directing him to deliver his cargo at some good wharf in the immediate neighborhood of Willow street wharf. This notice should have been given at least two days before, and the delay is solely imputable to the respondents, for the libellant seems to have been importunate in urging the consignees to appoint a suitable place of delivery. For this unnecessary detention of the vessel the consignees must be held accountable. But the libellant was in fault in discharging part of his cargo at Washington street wharf, because it was done not only without the permission, but against the express dissent of the consignees, and because, from circumstances known to the libellant, it was not a place suitable or convenient for them. For the expenses and loss to which they were thereby subjected the vessel is liable. The selection of the Central wharf, to which the vessel was removed from Washington street, seems to have been approved, or at least assented to, by both parties. But the delivery could not be completed there because the cargo was not removed as rapidly as it was discharged, and there was not room for the whole of it. A delay of at least one day was thereby occasioned, and it became necessary to take the vessel to an adjoining wharf, where her discharge was finished; and for this delay and the cost of removal the consignees are fairly chargeable. The account will then stand thus:

| | |
|---|---:|
| The libellant is entitled to damages in the nature of demurrage for three days' detention, at $50.00 per day.. | $150 00 |
| And to cost of removing vessel from Central wharf to Smith's......... | 20 50 |
| And to balance of freight money retained (gold) .................... | 200 00 |
| | $370 50 |
| The respondents are entitled to expenses incurred and loss sustained by delivery of part of cargo at Washington street wharf......... | 187 00 |
| Leaving due libellant .......... | $183 50 |

[1] [Reprinted from 30 Leg. Int. 329, by permission.]

And for this sum in gold, with interest from January 4, 1872, a decree will be entered in favor of the libellant with costs.